IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Yolanda Yevette Gardner, | ) | C/A No. 0:15-1123-RBH-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Carolyn W. Colvin, Acting Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 (D.S.C.). The plaintiff, Yolanda Yevette Gardner, brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be affirmed.

### SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A), (d)(5) and § 1382c(a)(3)(H)(i), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the Administrative Law Judge ("ALJ") to consider, in sequence:

(1)    whether the claimant is engaged in substantial gainful activity;

(2)    whether the claimant has a "severe" impairment;

(3)    whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4)    whether the claimant can perform her past relevant work; and

(5)    whether the claimant's impairments prevent her from doing any other kind of work.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[1]  If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step.  Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments.  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner.  To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980).  The Commissioner may carry this burden by obtaining testimony from a vocational expert.  Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

---

[1] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances.  20 C.F.R. §§ 404.1520(h), 416.920(h).



## ADMINISTRATIVE PROCEEDINGS

In January 2012, Gardner applied for DIB and SSI, alleging disability beginning October 15, 2010. Gardner's applications were denied initially and upon reconsideration, and she requested a hearing before an ALJ. A hearing was held on August 21, 2013 at which Gardner, who was represented by Eleanor Swierk, a non-attorney representative, appeared and testified. After hearing testimony from a vocational expert, the ALJ issued a decision on September 19, 2013 concluding that Gardner was not disabled from October 15, 2010 through the date of the decision. (Tr. 27-37.)

Gardner was born in 1971 and was thirty-nine years old at the time of her alleged disability onset date. (Tr. 196.) She has an eleventh-grade education and has past relevant work experience as a cashier and a housekeeper. (Tr. 240.) Gardner alleged disability due to right knee surgery and complications, left knee pain, back pain, a "stroke like event," high blood pressure, high cholesterol, allergies, recurrent headaches, "possible" heart problems, and recurrent depression. (Tr. 239.)

In applying the five-step sequential process, the ALJ found that Gardner had not engaged in substantial gainful activity since October 15, 2010—her alleged onset date. The ALJ also determined that Gardner's degenerative disc disease and obesity, and bilateral knee osteoarthritis and internal derangement status/post right knee arthroscopy were severe impairments. However, the ALJ found that Gardner did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). The ALJ found that Gardner retained the residual functional capacity to

> perform the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she cannot push or pull with the lower extremities. She can occasionally climb ramps/stairs and stoop but do no kneeling, climbing of ladders/ropes/scaffolds, balancing for safety on dangerous surfaces, crouching or crawling. She can frequently reach bilaterally and should avoid exposure to hazards such as unprotected heights and dangerous moving machinery. Additionally, she requires a sit/stand option at the workstation every 30 minutes to one hour.



(Tr. 31.)   The ALJ found that Gardner was unable to perform any past relevant work, but that considering Gardner's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Gardner could perform. Therefore, the ALJ found that Gardner was not disabled from October 15, 2010 through the date of her decision.

Gardner submitted additional evidence to the Appeals Council, which denied Gardner's request for review on January 9, 2015, making the decision of the ALJ the final action of the Commissioner.   (Tr. 1-6.)   This action followed.

### STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).   Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied.   See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).   "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589.   In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence.   Blalock, 483 F.2d at 775.



**ISSUES**

Gardner raises the following issues for this judicial review:

I.      Gardner's application for benefits should be remanded for administrative consideration of new evidence from her treating orthopedic surgeon which was submitted to the Appeals Council.

II.     The ALJ did not explain [her] findings regarding the Plaintiff's residual functional capacity, as required by Social Security Ruling 96-8p.

III.    The ALJ erred in failing to properly evaluate whether the Plaintiff's degenerative disc disease meets and/or equals the criteria of Listing 1.04[.]

IV.     The ALJ failed to properly evaluate the credibility of the Plaintiff.

(Pl.'s Br., ECF No. 11.)

**DISCUSSION**

**A.      Additional Evidence Submitted to the Appeals Council**

Gardner's first argument stems from the fact that after the issuance of the ALJ's decision, Gardner submitted additional evidence to the Appeals Council. The evidence at issue consisted of a letter from Dr. Leland Stoddard, Gardner's treating orthopedic surgeon, dated November 21, 2014. (Tr. 21.) The letter states, in pertinent part:

> This letter is written at the patient's request. This letter will confirm that I have seen and treated Yolanda Gardner for problems with her back and knees. This patient has fairly advanced arthritis in the knees, much worse than for a normal person of her age. She also has degenerative disc disease with chronic back pain and radicular symptoms in the lower back. I feel that these two conditions render her disabled from any remunerative employment. These are permanent conditions not likely to substantially change. She remains under my care for these conditions.

(Id.)

In reviewing this letter, the Appeals Council observed that "[t]he Administrative Law Judge decided your case through September 19, 2013. This new information is about a later time.

Therefore, it does not affect the decision about whether you were disabled beginning on or before September 19, 2013." (Tr. 2.)

The law provides that evidence submitted to the Appeals Council with the request for review must be considered in deciding whether to grant review "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." Wilkins v. Sec'y, Dep't of Health & Human Servs., 953 F.2d 93, 95-96 (4th Cir. 1991) (*en banc*) (quoting Williams v. Sullivan, 905 F.2d 214, 216 (8th Cir. 1990)). Evidence is new "if it is not duplicative or cumulative." Id. at 96. "Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." Id. When a claimant seeks to present new evidence to the Appeals Council, she is not required to show good cause for failing to present the evidence earlier. Id. at 96 n.3; cf. 20 C.F.R. § 404.970(b).

Furthermore, the United States Court of Appeals for the Fourth Circuit has explicitly held that "[t]he Appeals Council need not explain its reasoning when denying review of an ALJ decision." Meyer v. Astrue, 662 F.3d 700, 702 (4th Cir. 2011). In determining whether the Commissioner's final decision is supported by substantial evidence and reached through the application of the correct legal standard, the court must " 'review the record as a whole' including any new evidence that the Appeals Council 'specifically incorporated . . . into the administrative record.' " Id. at 704 (alterations in original) (quoting Wilkins, 953 F.2d at 96). If the court cannot determine whether, in light of the additional evidence submitted, the Commissioner's decision is supported by substantial evidence, remand is warranted. Meyer, 662 F.3d at 707 (reversing and remanding the Commissioner's decision because upon considering the whole record, including the new evidence submitted to the Appeals Council, the court could not determine whether substantial evidence supported the ALJ's denial of benefits). The Meyer Court recognized, however, that in some cases

the record would clearly show that the additional evidence did not cause the ALJ's decision to be unsupported by substantial evidence. See id. (discussing Smith v. Chater, 99 F.3d 635, 638-39 (4th Cir. 1996)).

According to Gardner, the additional evidence warrants remand for further consideration under controlling law. Specifically, Gardner argues that although the letter is dated after the ALJ's decision, because Dr. Stoddard had treated Gardner from October 2010 through the date of the letter and because his letter does not specify that his statements are limited to more recent problems, the opinion expressed in the letter relates to the period on or before the date of the ALJ's decision. The court disagrees.

As an initial matter, the Commissioner argues that the evidence was not "new," and in support of this argument appears to improperly rely on caselaw interpreting the definition of "new" for a remand under sentence six of § 405(g) rather than sentence four.[2] See Wilkins, 953 F.2d at 96 (explaining that evidence submitted to the Appeals Council is "new" "if it is not duplicative or

---

[2] As stated above, pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits; however, this review is limited. Remand is permitted pursuant to either sentence four or sentence six of § 405(g). See Shalala v. Schaefer, 509 U.S. 292, 296 (1993) (stating sentence four and sentence six are the "exclusive" methods by which courts may remand social security appeals). Under sentence four, review is limited to the pleadings and the administrative record. See 42 U.S.C. § 405(g); Wilkins v. Sec'y, Dep't of Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991) (en banc) ("Reviewing courts are restricted to the administrative record in performing their limited function of determining whether the Secretary's decision is supported by substantial evidence.") (quoting Huckabee v. Richardson, 468 F.2d 1380, 1381 (4th Cir. 1972)). Sentence six provides an avenue for remand where there is new information that is not part of the administrative record. The court may remand a case under sentence six of 42 U.S.C. § 405(g) "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); see also Schaefer, 509 U.S. at 297 n.2 ("Sentence-six remands may be ordered in only two situations: where the [Commissioner] requests a remand before answering the complaint, or where new, material evidence is adduced that was for good cause not presented before the agency.") (citations omitted).



cumulative")[3] with Melkonyan v. Sullivan, 501 U.S. 89, 98 (1991) (stating that pursuant to the sixth sentence of § 405(g), "[t]he district court does not affirm, modify, or reverse the Secretary's decision; it does not rule in any way as to the correctness of the administrative determination. Rather, the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding.") and Sullivan v. Finkelstein, 496 U.S. 617, (1990) (explaining that as opposed to the fourth sentence of § 405(g), "[t]he sixth sentence of § 405(g) plainly describes an entirely different kind of remand, appropriate when the district court learns of evidence not in existence or available to the claimant at the time of the administrative proceeding that might have changed the outcome of that proceeding").

Nonetheless, the Commissioner also argues, and the court agrees, that Gardner has failed to demonstrate that the Appeals Council's determination that Dr. Stoddard's letter did not relate to the period on or before the date of the ALJ's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. The opinion letter at issue was dated over a year after the ALJ's decision and does not indicate a time period for this opinion. Thus, remand is not warranted for further consideration of Dr. Stoddard's letter.

Moreover, even if the Appeals Council erred in finding that it did not relate to the relevant time period, Gardner cannot demonstrate any harm from such an error. See Tanner v. Comm'r of Soc. Sec., 602 F. App'x 95, 101 (4th Cir. 2015) (finding, in spite of the ALJ's error, reversal not

---

[3] The Commissioner also incorrectly cites Wilkins, 953 F.2d at 96, for the proposition that the letter is not new if "the contents of the letter were 'available to [Plaintiff] at the time of the administrative proceeding.' " (Def.'s Br. at 21, ECF No. 12 at 21.) However, that quotation does not appear in the majority opinion of the Wilkins Court, and the Wilkins opinion does not support such a proposition under sentence four.



warranted where it was "highly unlikely, given the medical evidence of record, that a remand to the agency would change the Commissioner's finding of nondisability"); Bishop v. Comm'r of Soc. Sec., 583 F. App'x 65, 67 (4th Cir. 2014) (applying the harmless error rule in the social security context and stating that "even assuming Chenery is applicable, any error is reviewed under the harmless error doctrine.  Thus, if the decision 'is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support, then remanding is a waste of time.' ") (quoting Spiva v. Astrue, 628 F.3d 346, 353 (7th Cir. 2010)).  Here, the record clearly shows that the additional evidence does not cause the ALJ's decision to be unsupported by substantial evidence, as Dr. Stoddard's letter fails to include an opinion on any functional limitations.  See Meyer, 662 F.3d at 707.  Rather, his letter merely opines that Gardner is disabled, which is an opinion reserved to the Commissioner and not entitled to special significance.[4]  See 20 C.F.R. §§ 404.1527(d), 416.927(d) (explaining that the issue of whether a claimant is disabled or unable to work is reserved to the Commissioner, and opinions by medical sources on that point are not entitled to special significance).

## B.    Residual Functional Capacity

A claimant's residual functional capacity is "the most [a claimant] can still do despite [her] limitations" and is determined by assessing all of the relevant evidence in the case record.  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  In assessing residual functional capacity, an ALJ should scrutinize "all of the relevant medical and other evidence." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).  Social

---

[4] For these same reasons, Gardner cannot demonstrate that the new evidence is material.  See Wilkins, 953 F.2d at 96 ("Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome.").



Security Ruling 96-8p further requires an ALJ to reference the evidence supporting her conclusions with respect to a claimant's residual functional capacity.

### 1.    Sit/Stand Option

Gardner argues that the sit/stand limitation included in the ALJ's residual functional capacity assessment is too ambiguous.  Specifically, the ALJ found that Gardner required "a sit/stand option at the workstation every 30 minutes to one hour." (Tr. 31.)  Gardner argues that this limitation is insufficiently specific as to the frequency of Gardner's need to alternate between sitting and standing to satisfy the specificity requirements in SSR 96-9p.[5]  Gardner appears to argue that the ALJ should have indicated how long the individual would need to stand before sitting back down.  However, as pointed out by the Commissioner, when presented with a similar argument, at least one court in this district found as follows:

> A plain reading of SSR 96-9p reveals that the ruling only requires the RFC assessment to specify 'the frequency of the individual's need to alternate sitting and standing.'  Although the ruling provides that the occupational base may be eroded by the length of time the claimant needs to stand, it does not mandate that such information be included in the RFC assessment.  SSR 96-9p also states that a vocational resource may be useful in matters involving a sit-stand option.  Here, the ALJ consulted with a VE, thereby strengthening the finding that there were jobs in the national and regional economies that Plaintiff could perform with a sit-stand option.

---

[5] SSR 96-9p states, in pertinent part:

**Alternate sitting and standing:**  An individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically.  Where this need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded.  The extent of the erosion will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand.  The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing.  It may be especially useful in these situations to consult a vocational resource in order to determine whether the individual is able to make an adjustment to other work.
SSR 96-9p, 1996 WL 374185, at *7.



Bryant v. Colvin, Civil Action No. 1:13-cv-1994 DCN, 2014 WL 3670842, at *14 (D.S.C. July 22, 2014) (footnote acknowledging other rulings omitted). The court agrees with this reasoning. Therefore, although additional explanation may have been preferable, see id., the court concludes that Gardner has failed to demonstrate any error by the ALJ.

### 2.        Assistive Device

Gardner next argues that the ALJ erred in failing to account for Gardner's use of a cane in the ALJ's residual functional capacity assessment. Gardner points to her own testimony as well as medical records noting that she used a cane; had an antalgic gait; was limping; and had decreased cadence, stance time, stride length, and weight bearing on one side or the other. Gardner argues that this evidence demonstrates that she requires a cane when standing as well as walking. However, Gardner has not pointed to any evidence "describing the circumstances for which [the cane] is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96-9p, 1996 WL 374185, at *7 ("To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)."). At most, the medical evidence demonstrates that Gardner uses a cane without further specifics on its use. Additionally, at the hearing the ALJ specifically asked Gardner when she used the cane, and she responded, "When I'm walking." (Tr. 51.)

In this case, although not expressly included as a limitation in Gardner's residual functional capacity, the ALJ specifically asked the vocational expert if a hypothetical individual with the limitations included in Gardner's residual functional capacity could perform the jobs ultimately



identified in the decision if he or she needed to use a cane when walking. The vocational expert responded affirmatively. (Tr. 70-71.) Thus, even if the ALJ erred in failing to find that Gardner required a cane to ambulate in the ALJ's residual functional capacity assessment, any such error is harmless.

### 3.    Gardner's Alleged Pain

Gardner also argues that the ALJ erred in failing to properly consider the impact of her pain on her residual functional capacity. In support of this argument, Gardner points to her subjective complaints of pain, which also form the basis for her arguments in Issue III that the ALJ erred in evaluating her credibility. Therefore, the court will address these arguments together.

In evaluating subjective complaints, the United States Court of Appeals for the Fourth Circuit has stated that "the determination of whether a person is disabled by pain or other symptoms is a two-step process." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). The first step requires there to "be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig, 76 F.3d at 594 (internal quotation omitted). During the second step, the ALJ must expressly consider "the intensity and persistence of the claimant's [symptom] and the extent to which it affects her ability to work." Id. In making these determinations, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186, at *2. "[A]llegations concerning the intensity and persistence of pain or other symptoms may not be disregarded *solely* because they are not substantiated by objective medical evidence." Id.. at *6 (emphasis added).



"This is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work." Craig, 76 F.3d at 595. A claimant's subjective complaints "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the [symptoms] the claimant alleges she suffers." Id. The social security regulations inform claimants that in evaluating subjective complaints, the Commissioner will consider the following relevant factors:

> (i)    Your daily activities;
> (ii)   The location, duration, frequency, and intensity of your pain or other symptoms;
> (iii)  Precipitating and aggravating factors;
> (iv)   The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
> (v)    Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
> (vi)   Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
> (vii)  Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

In this case, the ALJ summarized Gardner's allegations as follows:

At the hearing, the claimant testified that she finished the 11th grade. She has been taking online classes and is one short to obtain her diploma. The claimant reported that she stopped because she could not afford to attend the classes. When she was taking these classes, she was on the computer at her own pace and started these courses in 2009. The last time she took an online class was in 2010. She has a driver's license and sometimes drives locally. Regarding her son, the claimant testified that she used to take him to school but he rides the bus now. She watches her son play outside and occasionally plays kickball with him a little bit. He is 7 years old and lives with her. She is living with a friend who has a 9-year old child. She can use the computer to access Facebook but does not do it for more than 15 minutes. She is 5 feet 7 inches tall and weighs 230 pounds. Dr. Stoddard prescribed



her cane and she uses it when she is walking. The claimant stopped working in 2010 because she could not bear to walk on the right leg due to pain. She had surgery in early 2011 on her right knee. She also has pain in her left leg and lower back. Since 2011, she has had injections in her knees but they only helped temporarily. She also had physical therapy but it did not help much and she was discharged. In April 2013, Dr. Stoddard told her she was too young to have a knee replacement and he wanted to do arthroscopic surgery again. She is hesitant to have this surgery because she does not feel that the first surgery in 2011 helped. Her left leg is starting to feel like the right leg. As for her back pain, the claimant stated that her back is not severe enough yet to have surgery but she is supposed to receive some injections. She does not have health insurance right now and has to go through the Medicaid process again. When her leg gets weak, they will give out and she will fall. She is taking blood pressure medication and high cholesterol medication. Ibuprofen helps her knee pain for a while but it wears off. Headaches occur 2-3 times per week. She feels down from sitting around and not working. She can walk 10-15 minutes and sit for 5-10 minutes. She thinks she could do a job where the employer let her stand and sit when she wanted for 8 hours per day. On a typical day, she does housework sometimes with breaks, cooks using the microwave and stove, and visits with one friend who comes over.

(Tr. 32.)

The ALJ found that Gardner's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," but that her statements concerning the intensity, persistence, and limiting effects of the alleged symptoms were not entirely credible based on the record in this case. (Tr. 32.) In support of this finding, the ALJ found that the medical evidence did not support Gardner's allegations. The ALJ found that she had received only conservative treatment for her degenerative disc disease since the alleged onset date. After summarizing Gardner's treatment records for her back, the ALJ concluded that

> [o]verall, the evidence of record does not demonstrate any regular and continuing treatment for her cervical degenerative disc disease and only conservative treatment, including one injection and physical therapy, for her lumbar degenerative disc disease. Surgical intervention is not necessary and Dr. Reuben did not feel that regular follow-up was needed as of April 2013. As such, the undersigned finds that she is capable of performing work within the residual functional capacity set forth above as it relates to her degenerative disc disease. Although the claimant testified that she cannot sit for more than 10 minutes without moving around, she was capable of sitting for greater than 30 minutes at the hearing without changing positions.



(Tr. 33.)  The ALJ also found that Gardner's obesity had not had a negative effect on her abilities beyond the limitations included in Gardner's residual functional capacity.  Finally, the ALJ summarized at length the records addressing Gardner's knee impairments and concluded as follows:

> This evidence reveals that despite her complaints of disabling knee pain, Dr. Stoddard has assessed her osteoarthritis as "quite mild." No instability or significant swelling have been noted upon examination.  She is not taking narcotic pain medication and has not had further surgical intervention since 2011.  Although her knee condition limits her, the undersigned has considered these limitations in restricting her to sedentary work with no pushing or pulling with the lower extremities and only occasional climbing of ramps/stairs and stooping. Furthermore, she has been restricted to no kneeling, climbing ladders/ropes/scaffolds, balancing for safety, crouching or crawling.  Although the claimant testified that Dr. Stoddard prescribed her cane, the evidence of record does not reflect such a prescription.

(Tr. 34.)

Gardner attempts to challenge some of the reasons offered by the ALJ.  First, Gardner argues that although Dr. Stoddard assessed Gardner's osteoarthritis as "quite mild," he treated her for her back and knees impairments and discussed with Gardner the possibility of knee replacement surgery. Gardner further points out that she continually reported pain in her knees despite treatment (which included an arthroscopy, prescribed medications, injections, and physical therapy) and the ALJ erred in failing to consider her persistent attempts to obtain pain relief.  Thus, Gardner argues that the ALJ "cherry-picked" the evidence to minimize her condition.  (See Pl.'s Br. at 26-29, ECF No. 11 at 26-29.)  Second, Gardner argues that the ALJ improperly used a "sit and squirm" test in evaluating Gardner's credibility by considering the length of time Gardner was able to sit at the hearing in evaluating her credibility.  Finally, Gardner argues that the ALJ's statements that her impairments "could be reasonably expected to cause some of the alleged symptoms" was ambiguous, citing Woodby v. Colvin, Civil Action No. 1:14-952-RMG, 2015 WL 628482 (D.S.C. Feb. 12, 2015).

The court has carefully considered the parties' arguments and the record in this matter and finds that Gardner has failed to demonstrate that the ALJ's evaluation of Gardner's subjective complaints is unsupported by substantial evidence or controlled by an error of law.  See Craig, 76 F.3d at 589 (defining "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance" and stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); Blalock, 483 F.2d at 775 (indicating that regardless of whether the court agrees or disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence).  As an initial matter, Gardner has failed to demonstrate that the ALJ failed to properly apply the relevant factors in evaluating her credibility.  See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); see also Massey v. Astrue, CA No. 3:10-2943-TMC, 2012 WL 909617, at *4 (D.S.C. Mar. 16, 2012) ("As to the sit and squirm observations, the ALJ may not *solely* base a credibility determination on his observations at a hearing; however, the ALJ may include these observations in his credibility determination.") (emphasis in original); SSR 96-7p, 1996 WL 374186, at *8 ("In instances in which the adjudicator has observed the individual, the adjudicator is not free to accept or reject the individual's complaints solely on the basis of such personal observations, but should consider any personal observations in the overall evaluation of the credibility of the individual's statements[.]").  In fact, the ALJ's decision reflects that she carefully considered the requisite factors in evaluating Gardner's credibility throughout the decision.

Further, while Gardner may point to selective medical evidence in the record in support of her argument, such evidence does not render the ALJ's decision unsupported.  Contrary to Gardner's allegations that the ALJ "cherry-picked" the record, the ALJ's discussion reveals that she considered



the various treatments that Gardner underwent for her knee. (See Tr. 34) (discussing the evidence relating to Gardner's knee impairment beginning in 2010). While Dr. Stoddard mentions in a record that he discussed with Gardner the possibility of knee replacement surgery, he stated that he believed at her age "an arthroscopy would be more appropriate." (Tr. 474.) However, as indicated in the ALJ's decision, Gardner did not proceed with the recommended procedure because she did not believe it would be beneficial. (Tr. 34.) Moreover, even accepting Gardner's arguments as true, the court finds that her arguments do not render the ALJ's decision unsupported in light of all the reasons offered by the ALJ.

Thus, as stated above, the court may not substitute its judgment for the Commissioner's and finds that the ALJ's conclusions are within the bounds of the substantial evidence standard. See Craig, 76 F.3d at 595 (stating that a claimant's subjective complaints of pain itself or its severity "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the [symptoms] the claimant alleges she suffers"); see also Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) (per curiam) (finding that the ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints).

Finally, the court finds that remand is not warranted based on Gardner's argument that the ALJ's statements that her impairments "could be reasonably expected to cause some of the alleged symptoms" was ambiguous. Gardner's reliance on Woodby v. Colvin, Civil Action No. 1:14-952-RMG, 2015 WL 628482 (D.S.C. Feb. 12, 2015), is misplaced. In Woodby, the district judge adopted without objections a magistrate judge's recommendation and finding that the ALJ failed to properly assess the plaintiff's credibility in part based on the ALJ's findings that the plaintiff's "impairments



could reasonably be expected to cause *some level* of the alleged symptoms." Id. at *16 (emphasis added). However, the court finds Gardner's case to be more analogous to a subsequent case before the same magistrate judge, where an ALJ found that the "impairments could reasonably be expected to cause *some* of the alleged symptoms." Smith v. Colvin, C/A No.: 1:14-4400-RBH-SVH, 2015 WL 10527437, at *19 (D.S.C. Sept. 21, 2015) (Report and Recommendation), rejected on other grounds by 2016 WL 1089302 (D.S.C. Mar. 21, 2016). Like Smith, the court finds that in this case, the ALJ's discussion of Gardner's testimony and the evidence reveals that the ALJ found that the record did not support all of Gardner's alleged impairments and the specific limitations that she found that Gardner's impairments did impose satisfying the specificity requirements.

## C.     Listing 1.04

At Step Three, the Commissioner must determine whether the claimant meets the criteria of one of the Listings and is therefore presumptively disabled. "For a claimant to show that [her] impairment matches a listing, it must meet *all* of the specified medical criteria." Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis added). It is not enough that the impairments have the diagnosis of a listed impairment; the claimant must also meet the criteria found in the Listing of that impairment. 20 C.F.R. §§ 404.1525(d), 416.925(d); see also Bowen v. Yuckert, 482 U.S. 137, 146 (1987) (noting that the burden is on the claimant to establish that his impairment is disabling at Step Three); Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (same). The Commissioner compares the symptoms, signs, and laboratory findings of the impairment, as shown in the medical evidence, with the medical criteria for the listed impairment. Additionally, when a claimant has more than one impairment, the ALJ must consider the combined effect of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. 20 C.F.R. §§ 404.1523, 416.923.



At Step Three, the ALJ found that Gardner "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." (Tr. 30.) Gardner argues that the ALJ erred in failing to properly consider evidence that allegedly supported a finding that Gardner's impairments met or medically equaled Listing 1.04; Gardner's arguments appear to be directed to Listing 1.04A.[6]  In this case, the ALJ explicitly discussed whether Gardner's impairments met or equaled the requirements of Listing 1.04 and found that they did not.  Specifically, the ALJ stated as follows:

> Listing 1.04 requires a disorder of the spine resulting in compromise of a nerve root or the spinal cord with evidence of nerve root compression; spinal arachnoiditis; or lumbar spinal stenosis with pseudoclaudication.  An MRI of the claimant's cervical spine from November 2011 demonstrated a mild left asymmetric disc bulge at C4-5 with secondary mild canal narrowing and mild flattening of the anterior spinal cord. (Exhibit 2F)  An x-ray of the lumbar spine from this same time indicated mild levoscoliosis of the lower lumbar spine.  (Exhibit 2F)  An updated x-ray of the lumbar spine from February 2012 demonstrated minimal curvature and endplate degenerative changes.  (Exhibit 4F)  An MRI of the lumbar spine in August 2010 confirmed disc protrusions at L4-5 and L5-S1 which gently contacted the exiting nerve roots with gentle compressions at these levels.  (Exhibit 8F)  Despite these findings, the claimant's examinations, discussed in detail below, show[] that she is capable of ambulating effectively as defined in Listing 1.00B2b, and the record does not confirm positive straight leg raising tests in both the sitting and supine positions

---

[6] This Listing provides in pertinent part:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
> A.    Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine). . . .



or motor, sensory and reflex loss as required by Listing 1.04A. As such, her degenerative disc disease does not meet or equal Listing 1.04.

(Tr. 30.)

Gardner first argues that effective ambulation is not required for Listing 1.04A, and is only relevant for Listing 1.04C. District courts in this circuit and in others are split on whether Listing 1.04A encompasses a requirement that a claimant prove ineffective ambulation, and the Fourth Circuit has not explicitly considered this issue. See, e.g., Soles v. Colvin, No. 1:13CV491, 2015 WL 7454607, at *7 (M.D.N.C. Nov. 23, 2015) (Memorandum Opinion and Recommendation) (discussing the split and holding "[d]espite these disagreements, the opinions of the Third and Fifth Circuits, in addition to the clear majority of the districts within our circuit, lead this Court to conclude that the weight of authority supports the argument that Listing 1.04A requires proof of a claimant's inability to ambulate effectively."). Agreeing with the majority of the courts and circuits, this court finds that meeting Listing 1.04A requires a claimant to demonstrate an inability to ambulate effectively. See id. at *6 ("Listing 1.00 contains the introduction to the musculoskeletal system listings, and Listing 1.04A falls under that category."). Gardner's reliance on evidence in the record of an antalgic gait and use of assistive device are insufficient to render the ALJ's determination that Gardner "is capable of ambulating effectively as defined in Listing 1.00B2b" unsupported. Specifically, Listing 1.00B2b defines the inability to ambulate effectively as

> an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of *both upper extremities*.

20 C.F.R. Part 404, Subpart P, App. 1, Listing 1.00B2b(1) (emphasis added).



Moreover, even if the court were to determine that Listing 1.04A did not require the inability to ambulate effectively, the court agrees that Gardner has failed to demonstrate that the ALJ's finding is unsupported by substantial evidence as Gardner has failed to direct the court to evidence of positive straight-leg raising test, *both* sitting and supine.

### RECOMMENDATION

For the foregoing reasons, the court finds that Gardner has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard.  See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).  The court therefore recommends that the Commissioner's decision be affirmed.

April 19, 2016                                    Paige J. Gossett
Columbia, South Carolina                          UNITED STATES MAGISTRATE JUDGE

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).