UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| Yolanda Yevette Gardner, ) | Civil Action No.: 0:15-cv-01123-RBH |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| Carolyn W. Colvin, Acting Commissioner ) | |
| of the Social Security Administration, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the Court following the issuance of a Report and Recommendation ("R&R") by United States Magistrate Judge Paige J. Gossett.[1] Plaintiff, Yolanda Yevette Gardner, brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commission of Social Security ("the Commissioner") denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Magistrate Judge recommended affirming the Administrative Law Judge's decision denying Plaintiff's claim for benefits.

**FACTUAL FINDINGS AND PROCEDURAL HISTORY**

Plaintiff applied for DIB and SSI on December 15, 2011, alleging disability as of October 15, 2010. The applications were denied initially and on reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held before the ALJ on August 21, 2013. Plaintiff, represented by a non-attorney representative, appeared and testified. A

---

[1] This matter was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2).

vocational expert also testified. The ALJ issued a decision on September 19, 2013, finding that Plaintiff was not disabled. The ALJ's findings are as follows:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2014.

2. The claimant has not engaged in substantial gainful activity since October 15, 2010, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3. The claimant has the following severe impairments: degenerative disc disease; obesity; and bilateral knee osteoarthritis and internal derangement status/post right knee arthroscopy (20 C.F.R. 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) except she cannot push or pull with the lower extremities. She can occasionally climb ramps/stairs and stoop but do no kneeling, climbing of ladders/ropes/scaffolds, balancing for safety on dangerous surfaces, crouching or crawling. She can frequently reach bilaterally and should avoid exposure to hazards such as unprotected heights and dangerous moving machinery. Additionally, she requires a sit/stand option at the workstation every 30 minutes to one hour.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on February 13, 1971, and was 39 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English. (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 15, 2010, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[ALJ Decision, ECF #10-2, at 13-22, Tr. 27-37].

The ALJ's finding became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for further review on January 9, 2015. Plaintiff filed this action on March 9, 2015, seeking judicial review of the ALJ's decision. [Compl., ECF #1]. Both Plaintiff and Defendant filed briefs, [ECF ## 11 & 12]. The Magistrate Judge issued her Report and Recommendation ("R&R") on April 19, 2016, recommending that the ALJ's decision be affirmed. [R&R, ECF #14]. Plaintiff filed timely objections to the R&R on May 9, 2016. [Plaintiff's

Objections, ECF #25]. Defendant filed a reply to Plaintiff's objections on May 20, 2016. [ECF #16].

### STANDARD OF REVIEW

The federal judiciary has a limited role in the administrative scheme established by the Act, which provides the Commissioner's findings "shall be conclusive" if they are "supported by substantial evidence." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

This statutorily mandated standard precludes a de novo review of the factual circumstances that substitutes the Court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *Hicks v. Gardner*, 393 F.2d 299, 302 (4th Cir. 1968). The Court must uphold the Commissioner's factual findings "if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) (stating that even if the Court disagrees with the Commissioner's decision, the Court must uphold the decision if substantial evidence supports it). This standard of review does not require, however, mechanical acceptance of the Commissioner's findings. *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). The Court "must not abdicate [its] responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner]'s findings, and that [her] conclusion is rational." *Vitek*, 438 F.2d at 1157-58.


The Magistrate Judge makes only a recommendation to the Court. The Magistrate Judge's recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court must conduct a de novo review of those portions of the R & R to which specific objections are made, and it may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The Court must engage in a de novo review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.* However, the Court need not conduct a de novo review when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate [Judge]'s proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of specific objections to the R & R, the Court reviews only for clear error, *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005), and the Court need not give any explanation for adopting the Magistrate Judge's recommendation. *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983).

## APPLICABLE LAW

Under the Act, Plaintiff's eligibility for the benefits he is seeking hinges on whether he is under a "disability." 42 U.S.C. § 423(a). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). The claimant bears the ultimate burden to prove disability. *Preston v. Heckler*, 769 F.2d 988, 991 n.* (4th Cir. 1985). The claimant may establish a prima facie case of disability based solely upon medical evidence by

demonstrating that his impairments meet or equal the medical criteria set forth in Appendix 1 of Subpart P of Part 404 of Title 20 of the Code of Federal Regulations. 20 C.F.R. §§ 404.1520(d) & 416.920(d).

If such a showing is not possible, a claimant may also establish a prima facie case of disability by proving he could not perform his customary occupation as the result of physical or mental impairments. *See Taylor v. Weinberger*, 512 F.2d 664, 666-68 (4th Cir. 1975). This approach is premised on the claimant's inability to resolve the question solely on medical considerations, and it is therefore necessary to consider the medical evidence in conjunction with certain vocational factors. 20 C.F.R. §§ 404.1560(a) & § 416.960(a). These factors include the claimant's (1) residual functional capacity, (2) age, (3) education, (4) work experience, and (5) the existence of work "in significant numbers in the national economy" that the individual can perform. *Id.* §§ 404.1560(a), 404.1563, 404.1564, 404.1565, 404.1566, 416.960(a), 416.963, 416.964, 416.965, & 416.966. If an assessment of the claimant's residual functional capacity leads to the conclusion that he can no longer perform his previous work, it then becomes necessary to determine whether the claimant can perform some other type of work, taking into account remaining vocational factors. *Id.* §§ 404.1560(c)(1) & 416.960(c)(1). Appendix 2 of Subpart P governs the interrelation between these vocational factors. Thus, according to the sequence of evaluation suggested by 20 C.F.R. §§ 404.1520 & 416.920, it must be determined (1) whether the claimant currently has gainful employment, (2) whether he suffers from a severe physical or mental impairment, (3) whether that impairment meets or equals the criteria of Appendix 1, (4) whether, if those criteria are met, the impairment prevents him from returning to previous work, and (5) whether the impairment prevents him from performing some other available work.

## ANALYSIS

In this appeal, Plaintiff argues: 1) her application for benefits should be remanded for administrative consideration of new evidence from her treating orthopedic surgeon which was submitted to the Appeals Council; 2) the ALJ did not explain his findings regarding the Plaintiff's residual functional capacity, as required by Social Security Ruling 96-8p; 3) the ALJ erred in failing to properly evaluate whether the Plaintiff's degenerative disc disease meets and/or equals the criteria of Listing 1.04; and 4) the ALJ failed to properly evaluate Plaintiff's credibility.  In her R&R, the Magistrate Judge addressed each of Plaintiff's issues and found that Plaintiff had failed to show that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard.

I.     New Evidence Submitted to the Appeals Council

Plaintiff argues that her case should be remanded for administrative consideration of new evidence submitted to the Appeals Council from her treating orthopedic surgeon.  The evidence consisted of a letter from Dr. Leland Stoddard dated November 21, 2014, which states:

> This letter is written at the patient's request.  This letter will confirm that I have seen and treated Yolanda Gardner for problems with her back and knees.  This patient has fairly advanced arthritis in the knees, much worse than for a normal person of her age.  She also has degenerative disc disease with chronic back pain and radicular symptoms in the lower back.  I feel that these two conditions render her disabled from any remunerative employment.  These are permanent conditions not likely to substantially change.  She remains under my care for these conditions.

Tr. 21.  The Appeals Council noted that the ALJ decided Plaintiff's case through September 19, 2013 and the November 21, 2014 letter concerned a later time. Tr. 2.  Therefore, the Appeals

Council concluded, Dr. Stoddard's letter "does not affect the decision about whether [Plaintiff] was disabled beginning on or before September 19, 2013." *Id*.

Plaintiff argues that although Dr. Stoddard's letter is dated after the ALJ's decision, Dr. Stoddard treated Plaintiff from October 2010 through the date of the letter. Even though the letter fails to indicate when Plaintiff became disabled, Plaintiff contends the letter relates to the period of time on or before the ALJ's decision.

In her R&R, the Magistrate Judge found that Plaintiff failed to establish that the Appeals Council's conclusion - that the letter related to a period of time after the ALJ's decision - was unsupported by substantial evidence or reached through application of an incorrect legal standard. The Magistrate Judge further found that even if the Plaintiff could demonstrate error, she could not demonstrate any harm as a result of such an error. Dr. Stoddard's letter fails to include an opinion on any functional limitations and merely opines that Plaintiff is disabled, which is an opinion reserved to the Commissioner. Therefore, the Magistrate Judge found that Dr. Stoddard's letter, even if considered by the Appeals Council, does not cause the ALJ's decision to be unsupported by substantial evidence.

Plaintiff contends there is a substantial link between Dr. Stoddard's November 21, 2014 letter and his treatment records from the relevant time period. Because of the linkage, Plaintiff argues the Appeals Council erred in failing to give Dr. Stoddard's letter retrospective consideration. Plaintiff's objection questions whether the Magistrate Judge adequately considered the linkage between Dr. Stoddard's treatment notes and his November 21, 2014 letter. Plaintiff also objects to the Magistrate Judge's conclusion that Dr. Stoddard's letter merely opines that Plaintiff is disabled and notes that Dr. Stoddard's letter also indicates that Plaintiff suffers from fairly advanced arthritis

in the knees and degenerative disc disease with chronic back pain and radicular symptoms in the lower back.

"[A] treating physician may properly offer a retrospective opinion on the past extent of an impairment." *Wilkins v. Secretary, Dept. of Health and Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991). The Appeals Council must consider evidence submitted with the request for review in deciding whether to grant review "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." *Id*. at 95-96. Evidence is new if it is not duplicative or cumulative. *Id*. at 96. Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome. *Id*. (citing *Borders v. Heckler*, 777 F.2d 954, 956 (4th Cir.1985)).

Dr. Stoddard's letter is dated over one year after the ALJ's decision and fails to set forth any time period or onset date relative to his opinion that Plaintiff is disabled due to her arthritis and degenerative disc disease. It is not clear from the letter when Plaintiff could have become disabled as a result of the arthritis and degenerative disc disease. Plaintiff's conditions are progressive in nature and may not have been disabling on or before the ALJ's date of decision. From the letter, there is simply no way to know and further administrative consideration of the letter will not make it any more clear. The letter does not address any functional limitations and offers little more than a conclusion that is specifically reserved to the Commissioner. The diagnosis of degenerative disc disease and arthritis was not new information as it was reflected in Dr. Stoddard's treatment notes, which were before the ALJ. Plaintiff has failed to demonstrate that the Appeals Council's determination - that Dr. Stoddard's letter did not relate to the relevant time period and, as a result, did not affect the decision about whether [Plaintiff] was disabled beginning on or before September

19, 2013 - was unsupported by substantial evidence or reached through application of an incorrect legal standard. To the extent the Appeals Council erred, such error was harmless. Plaintiff's objection with respect to Dr. Stoddard's letter is overruled.

II.     Residual Functional Capacity and Credibility

Plaintiff argues the ALJ did not explain his findings regarding Plaintiff's residual functional capacity ("RFC") as required by Social Security Ruling 96-8p. Specifically, Plaintiff takes issue with the ALJ's findings relative to the sit/stand option, Plaintiff's need for an assistive device, Plaintiff's complaints of pain, and her credibility with respect to the severity of her pain.

The ALJ found that Plaintiff had the RFC to perform sedentary work except she could not push or pull with the lower extremities. The ALJ further limited the Plaintiff by finding that she could occasionally climb ramps/stairs and stoop but do no kneeling, climbing of ladders/ropes/scaffolds, balancing for safety on dangerous surfaces, crouching or crawling. The ALJ found that Plaintiff could frequently reach bilaterally and should avoid exposure to hazards such as unprotected heights and dangerous moving machinery. Additionally, the ALJ found that Plaintiff required a sit/stand option at the workstation every 30 minutes to one hour.

A.     Sit/stand option

Plaintiff argues that the ALJ's RFC findings are too ambiguous in terms of the sit/stand option. Relying on Social Security Ruling 96-9p, Plaintiff contends a remand is required for clarification of the frequency with which Plaintiff would need to alternate between sitting and standing, and for an explanation as to the length of time Plaintiff can sit, and subsequently stand during those intervals.

Social Security Ruling 96-9p provides:

> An individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically. Where this need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded. *The extent of the erosion will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand. The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing.* It may be especially useful in these situations to consult a vocational resource in order to determine whether the individual is able to make an adjustment to other work.

The Magistrate Judge recommended affirming the ALJ finding that SSR 96-9p does not mandate that the length of time the claimant needs to stand be included in the RFC assessment. The Magistrate Judge stated that although additional explanation may have been preferable, Plaintiff has failed to demonstrate any error by the ALJ.

Although Plaintiff filed objections to the R&R, she did not indicate any objection to the Magistrate Judge's recommendation regarding the sit/stand option. The Court has conducted a de novo review and finds that the ALJ's RFC assessment was sufficiently specific as to the sit/stand option to satisfy the requirements of Social Security Ruling 96-9p.

    B.    Assistive Device

Plaintiff argues the ALJ erred in failing to account for the Plaintiff's use of an assistive device (cane) in the RFC assessment. The Magistrate Judge stated that "[a]t most, medical evidence demonstrates that Plaintiff uses a cane without further specifics on its use." The Magistrate Judge further noted that the specifics of Plaintiff's use of a cane was clarified by her testimony that she used the cane "[w]hen I'm walking." The Magistrate Judge found that to the extent the ALJ erred in failing to account for Plaintiff's use of a cane in the RFC assessment, the error was rendered harmless when the ALJ asked the vocational expert if a hypothetical individual with the limitations

included in Plaintiff's RFC assessment could perform the jobs identified in the decision if he or she needed to use a cane when walking and the vocational expert responded in the affirmative.

Plaintiff objected contending the ALJ had not fully discussed the record and references to cane use in her decision. Plaintiff fails to address, however, the Magistrate Judge's assertion that any error in failing to account for the use of the cane in the RFC assessment was rendered harmless by the ALJ's inclusion of the use of a cane in the hypothetical to the vocational expert and the vocational expert's response that at least "three occupations she identified could be done with the use of a cane when walking."

The specifics of Plaintiff's cane use was clarified by Plaintiff's own testimony that she used the cane when walking. The ALJ properly relied on Plaintiff's testimony and included the limitation in her hypothetical to the vocational expert. Because the vocational expert identified occupations that could be performed with Plaintiff's RFC and added limitation of using a cane when walking, the ALJ's finding of "not disabled" is supported by substantial evidence and any error in failing to include the use of a cane in the RFC was harmless.

      C.      Plaintiff's Alleged Pain and the ALJ's Credibility Determination

Plaintiff argues the ALJ erred in failing to properly consider the impact of her pain on her RFC. Related to this issue, Plaintiff also challenges the ALJ's finding that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible. The Magistrate Judge recommended affirming the ALJ finding that Plaintiff had failed to demonstrate that the ALJ's evaluation of Plaintiff's subjective complaints was unsupported by substantial evidence or controlled by an error of law. Despite Plaintiff's arguments that the ALJ "cherry-picked" evidence, the Magistrate Judge found that the ALJ properly applied the relevant

factors in assessing Plaintiff's credibility and the ALJ's conclusions were within the bounds of the substantial evidence standard.  The Magistrate Judge further concluded that the ALJ's discussion of Plaintiff's testimony and the evidence satisfied the specificity requirements.

In response, Plaintiff argues the ALJ failed to properly consider the intensity, persistence and limiting effects of Plaintiff's alleged symptoms.  Plaintiff argues the ALJ failed to resolve conflicting evidence in the record concerning Plaintiff's symptoms.  Plaintiff also argues the ALJ's credibility statement was ambiguous in that the ALJ found the medical impairments only could cause "some" of the alleged symptoms.  Plaintiff contends the ALJ should have specified which symptoms were caused by Plaintiff's medical impairments and which symptoms were not.

This Court finds the ALJ properly applied the relevant factors under 20 C.F.R. § 404.1529(c)(3) in assessing Plaintiff's credibility.  The ALJ appropriately discounted Plaintiff's subjective complaints of pain based on the following: 1) the conservative treatment for her degenerative disc disease; 2) MRI results reflecting mild degenerative disc changes and a mild disc bulge; 3) x-ray of lumbar spine indicating only mild levoscoliosis of the lower lumbar spine; 4) positive treatment notes; 5) denial of any difficulties in daily living in June 2012; 6) failure to obtain a recommended back brace; 7) stable motor and sensory function in her upper and lower extremities with 5/5 strength in the hip flexors, hip extensors, hip abductors, hip adductors, quadriceps, and hamstrings in April 2013; 8) indication of mild degenerative disc disease at L4-S1; 9) lack of any regular and continuing treatment for cervical degenerative disc disease and only conservative treatment for lumbar degenerative disc disease; 10) ability to sit for greater than 30 minutes without changing positions; 11) ability to move about generally well and sustain consistent function with respect to her obesity; 12) ability to drive, do some cooking, and household chores with breaks; 13)

Dr. Stoddard's characterization of Plaintiff's knee arthritis as "quite mild;" 14) examinations in October 2012 and April 2013 showing no instability; and 15) no surgical intervention with regard to the knees since 2011. Accordingly, this Court finds substantial evidence supports the ALJ's credibility determination.

The record reveals the ALJ weighed Plaintiff's subjective complaints against the medical records and resolved the conflicting evidence - in some cases in Plaintiff's favor. Based in part on Plaintiff's subjective complaints of pain, the ALJ rejected the State Agency medical consultants' finding that Plaintiff could perform light work. Instead, the ALJ restricted Plaintiff to sedentary work with no pushing and pulling with the bilateral lower extremities. The ALJ also restricted Plaintiff to frequent bilateral reaching rather than just left reaching in light of her back pain and included a sit/stand option to avoid prolonged positions that could aggravate Plaintiff's pain. Although the ALJ did not find that Plaintiff's symptoms and pain were disabling, the ALJ did account for Plaintiff's subjective complaints of pain in the RFC assessment by including restrictions beyond those restrictions recommended by the State Agency medical consultants.

As to Plaintiff's argument that the ALJ's credibility statement was ambiguous, the Court finds this argument to be without merit. Any ambiguity from the ALJ's statement that Plaintiff's medically determinable impairments could reasonably be expected to cause "some" of the alleged symptoms was clarified in the nine subsequent paragraphs, which discuss in detail Plaintiff's symptoms and residual functional capacity.

In summary, Plaintiff has failed to establish that the ALJ's credibility determination and assessment of Plaintiff's subjective complaints of pain was unsupported by substantial evidence or

controlled by an error of law.  Likewise, Plaintiff has failed to demonstrate that the ALJ's RFC assessment was unsupported by substantial evidence or controlled by an error of law.

III.     Listing 1.04

Finally, Plaintiff contends the ALJ erred in failing to find that Plaintiff's degenerative disc disease met or medically equaled the criteria of Listing 1.04.  Plaintiff contends she satisfies Listing 1.04A and argues the ALJ erred in requiring that she establish the inability to effectively ambulate to satisfy Listing 1.04A.  The Magistrate Judge recommended affirming the ALJ's finding on the basis that Plaintiff had failed to direct the court to evidence of positive straight-leg raising tests, *both* sitting and supine.  In her objections to the R&R, Plaintiff fails to address the assertion that she has not directed the court to evidence of positive straight-leg raising tests, *both* sitting and supine. Plaintiff focuses her argument on the proposition that Listing 1.04A does not require an inability to ambulate effectively.

Listing 1.04 concerns disorders of the spine and includes degenerative disc disease as a listed impairment.  For degenerative disc disease to qualify as a listed impairment under Listing 1.04A there must be "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)."  In this case, the ALJ found that Plaintiff did not meet the requirements of Listing 1.04 and stated "she is capable of ambulating effectively as defined in Listing 1.00B2b, and the record does not confirm positive straight leg-raising tests in both the sitting and supine positions or motor, sensory and reflex loss as required by Listing 1.04A."

After reviewing Plaintiff's medical records, it does not appear that Plaintiff exhibited the requisite positive straight leg-raising tests in both the sitting and supine positions or sufficient motor, sensory, and reflex loss. Plaintiff has, therefore, failed to demonstrate that the ALJ's finding is unsupported by substantial evidence. Although the Magistrate Judge appears to have concluded that Listing 1.04A requires the inability to effectively ambulate, the Court need not reach the issue because Plaintiff has not demonstrated positive straight leg-raising tests in both the sitting and supine positions or sufficient motor, sensory, and reflex loss. Accordingly, to the extent the ALJ erred by requiring an inability to effectively ambulate in order to qualify under Listing 1.04A, such error was harmless.

## Conclusion

The Court has thoroughly reviewed the entire record as a whole, the briefs, the Magistrate Judge's R&R, Plaintiff's objections to the R&R, and applicable law. For the foregoing reasons, the Court overrules Plaintiff's objections [ECF #15] and respectfully adopts and incorporates by reference the Magistrate Judge's R&R [ECF #14] except as to the Magistrate Judge's ruling that Listing 1.04A requires the claimant demonstrate an inability to effectively ambulate. The Commissioner's decision is hereby **AFFIRMED**.

**IT IS SO ORDERED**.

August 24, 2016                               s/ R. Bryan Harwell
Florence, South Carolina                      R. Bryan Harwell
                                              United States District Judge